[Cite as *Taft, Stettinius, & Hollister, L.L.P. v. Calabrese*, 2016-Ohio-4713.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TAFT, STETTINIUS, & HOLLISTER, LLP, | : | APPEAL NO. C-150097 |
| | | TRIAL NO. A-1404456 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| ANTHONY O. CALABRESE, III, | | |
| | : | |
| Defendant-Appellant/Third-party Plaintiff-Appellant, | : | |
| | | |
| vs. | : | |
| | | |
| RALPH KOHNEN | : | |
| | | |
| Third-Party Defendant-Appellee. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 30, 2016

*Taft, Stettinius, & Hollister, LLP,* and *Russell S. Sayre, John B. Nalbandian* and *Nicholas J. Pieczonka* for Plaintiff-Appellee Taft Stettinius & Hollister, LLP, and Third-Party Defendant-Appellee Ralph Kohnen,

*Stefanik & Christie, LLC,* and *John R. Christie* for Defendant-Appellant/Third-Party Plaintiff-Appellant Anthony O. Calabrese, III.

**STAUTBERG, Judge.**

{¶1}   This is an appeal from the trial court's entry of summary judgment in favor of the law firm of Taft, Stettinius, & Hollister, LLP, ("Taft") and attorney Ralph Kohnen on Anthony O. Calabrese's claims for breach of contract, unjust enrichment, and legal malpractice.  We affirm.

## Facts

{¶2}   Kohnen is a partner at Taft.   Calabrese hired Kohnen and Taft to represent him in connection with a criminal matter.  In pertinent part, the parties' engagement letter stated:

> You [Calabrese] have asked that we [Kohnen and Taft] represent you in a criminal investigation of you currently being conducted by the Federal Bureau of Investigation's Cleveland Resident Agency and the United States Attorney's Office for the Northern District of Ohio.  You have also asked that we represent you in any criminal proceeding in which you are a named defendant brought as a result of or at the conclusion of the aforementioned investigation.  * * *  Our services will include related proceedings before Courts of Appeals that are undertaken before final judgment in your case at the trial court level, but the scope specifically does not include any appeal from a final judgment at the trial court level.

{¶3}   In return, Calabrese paid Taft and Kohnen a flat fee.

{¶4}   Kohnen and other Taft attorneys represented Calabrese throughout the federal investigation.   On January 15, 2013, Calabrese pleaded guilty to federal charges.  In early April 2013, the Cuyahoga County Grand Jury indicted Calabrese on state charges.  According to Calabrese, these state charges stemmed from the same conduct as the federal charges, and were similar in nature to the federal charges.

Calabrese therefore believed that Taft would represent him on the state charges, and he emailed Kohnen asking who Taft was sending to appear at Calabrese's state arraignment. On April 12, 2013, Kohnen informed Calabrese that the parties' engagement letter did not contemplate representation on the state charges. Calabrese thereafter retained other counsel for the state matter. But Calabrese continued to dispute Taft and Kohnen's determination that the engagement letter did not require representation on the state charges. This disagreement eventually culminated in Calabrese and Taft, but not Kohnen, executing an agreement tolling the statute of limitations for all claims until August 4, 2014.

{¶5} Meanwhile, Taft and Kohnen continued to represent Calabrese in the federal case. On June 21, 2013, Calabrese was sentenced to nine years in federal prison. Taft and Kohnen claim that the last day that they provided representation to Calabrese was on July 22, 2013. Calabrese claims that Taft and Kohnen continued to represent him after sentencing in connection with Calabrese's federal restitution order. According to Calabrese, he was unaware that Taft and Kohnen had stopped representing him until Calabrese's federal prison account was debited on September 10, 2013. Apparently, the debiting of his account had alerted Calabrese to the fact that Taft and Kohnen were not working on a restitution plan.

{¶6} On July 30, 2014, after learning that Calabrese was contemplating suing Taft and Kohnen for failing to represent him in the state matter, Taft filed a complaint for declaratory judgment under R.C. 2721.03 asking the court to declare that, under the terms of its written contract with Calabrese, Taft had not been required to represent Calabrese in the state case. Taft also requested a declaration that any malpractice claim against Taft was time-barred.

3

{¶7} On August 4, 2014, Calabrese answered Taft's complaint, filed a third-party complaint against Kohnen, and counterclaimed against Taft, alleging breach of contract, unjust enrichment, and legal malpractice claims against both Taft and Kohnen. Taft and Kohnen subsequently moved for summary judgment on all of Calabrese's claims.

{¶8} The trial court determined that all of Calabrese's claims sounded in malpractice and were therefore subject to a one-year statute of limitations. The court further determined that any malpractice claim had accrued on April 12, 2013 because that was the date that Kohnen had informed Calabrese that he would not represent him on the state charges. And because the parties' tolling agreement had not been personally signed by Kohnen, the agreement could not be enforced against him. Without a claim against Kohnen—the only attorney named in Calabrese's lawsuit—any malpractice claim against Taft failed as a matter of law. The trial court therefore granted summary judgment in favor of Taft and Kohnen as to all of Calabrese's claims. Taft later voluntarily dismissed its declaratory judgment action. This appeal followed.

## Calabrese's Assignments of Error

{¶9} Calabrese raises five assignments of error. He claims that (1) the trial court erred in entering summary judgment because the state and federal cases were "inextricably tied together," (2) the trial court erred in entering summary judgment because "the Taft law firm provided or should have provided legal services" to Calabrese within one year of Calabrese's malpractice claim, (3) the trial court abused its discretion in denying a Civ.R. 56(F) motion Calabrese claims he filed, (4) the trial court erred in entering summary judgment because Taft and Kohnen's failure to represent him in the state case breached their contractual obligations to Calabrese, and (5) the trial court should have recused itself due to a "myriad of issues."

4

## Summary Judgment

{¶10} Calabrese's first, second, and fourth assignments of error challenge the trial court's summary-judgment order. We review the granting of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Grafton*; *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994). The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of any genuine issues of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). If the moving party meets its burden, the nonmoving party must then present evidence that some issue of material fact remains to be litigated. *Id.*

{¶11} We take Calabrese's assignments of error out of order, and address the fourth assignment of error first.

## Malpractice or Breach of Contract Claim?

{¶12} In his fourth assignment of error, Calabrese alleges that the trial court erred when it determined that his breach of contract claim was actually a malpractice claim.

{¶13} "The term 'malpractice' refers to professional misconduct, i.e., the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances." *Strock v. Pressnell*, 38 Ohio St.3d 207, 211, 527 N.E.2d 1235 (1988), citing 2 Restatement of the Law 2d, Torts, Section 299(A) (1965). A cause of action, no

matter how it is labeled, will be subsumed into a malpractice claim where that claim arises out of "the manner in which the attorney represented the client." *Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 90, 446 N.E.2d 820 (10th Dist.1982); *see Hibbert v. Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1st Dist.1982).

{¶14} Taft and Kohnen cite *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 5 F.Supp.3d 922 (S.D.Ohio 2014), in support of their position that Calabrese's contract claim sounded in malpractice. In *Davis*, Davis had entered into an agreement with Waite, Schneider, Bayless & Chesley ("the Waite Firm") whereby the Waite Firm had agreed to represent Davis on claims related to Davis's CNG investments. Davis believed that the parties' agreement covered cases beyond a single Hamilton County case that had been pending at the time of the agreement. The Waite Firm disagreed, and refused to represent Davis in three other CNG-investment-related actions that had arisen after the parties' entered their agreement. Davis ultimately hired other counsel to handle those matters. Davis later sued the Waite Firm for breach of contract, breach of fiduciary duty, and malpractice. In relevant part, the court determined that Davis's breach of contract claim was actually a claim for malpractice because the claim went to the manner in which the Waite Firm had represented—or failed to represent— Davis. The court reasoned that "[w]hile the Waite Firm's attorneys may have breached their contractual obligation by refusing to represent Davis in other actions, under Ohio law, such breach constitutes malpractice." *Id.* at 927. We believe that this is an accurate interpretation of Ohio law. *See Chambers v. Cottrell*, 6th Dist. Lucas No. L-10-1178, 2011-Ohio-144 (client's allegation that her attorney's failure to pursue a Dram Shop Act claim as allegedly required by the parties' contract went directly to manner in which her attorney had represented or failed to represent her, and therefore the claim sounded in malpractice); *United States Fid. & Guar. Co. v. Pietrykowski*, 6th Dist. Erie

No. E99-38, 2000 Ohio App. LEXIS 460 (Feb. 11, 2000) (insurance company sued the attorney it had hired to represent an insured, claiming that the attorney had failed to provide a defense to the insured; the court found that all claims sounded in malpractice because each claim, no matter how it was labeled, addressed issues of what the attorney did or did not do in the course of representing the insured); *Rumley v. Buckingham, Doolittle & Burroughs*, 129 Ohio App.3d 638, 718 N.E.2d 964 (10th Dist.1998) (where attorney had agreed to represent a client, but later left his law firm and client's case was never reassigned to another firm attorney, client's breach of contract claim was actually a claim for malpractice).

{¶15} Here, Calabrese is alleging that his attorney had a contractual obligation to represent him in both the federal and state cases, and that the failure to represent him in the state case constituted a breach of contract. This claim sounds in malpractice because it challenges the manner of Kohnen's representation. Moreover, the operative allegations upon which Calabrese relies for his breach of contract claim are the same for his malpractice claim. We therefore find that the trial court correctly determined that Calabrese's breach of contract claim was a malpractice claim.

{¶16} Calabrese's fourth assignment of error is overruled.

### Statute of Limitations for Malpractice

{¶17} Next, we address Calabrese's first and second assignments of error. In his first assignment of error, Calabrese contends that the trial court erred in entering summary judgment because the state and federal cases were "inextricably tied together." While not entirely clear from Calabrese's brief, it appears that this assignment of error goes to whether the trial court correctly determined that Calabrese's malpractice claim was time-barred. In Calabrese's second assignment of

error, he alleges that the trial court erred in ruling that his malpractice claim was untimely. We address these assignments of error, together.

{¶18} The statute of limitations for a legal-malpractice action is one year from when the cause of action accrued. R.C. 2305.11(A). A cause of action accrues "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398 (1989). Therefore whether the statute of limitations bars a legal-malpractice claim turns on two factual determinations: "(1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of these two dates is the date that starts the running of the statute of limitations." *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 4.

{¶19} Taft and Kohnen claim that the attorney-client relationship ended when Kohnen informed Calabrese on April 12, 2013, that Kohnen and Taft would not represent Calabrese on the state charges. This statement would normally suffice for purposes of R.C. 2305.11 to establish a termination of the attorney-client relationship. *See Conley* at ¶ 10-11. And it does suffice to show that the attorney-client relationship as to the state charges, if one had ever existed, had ended. However, it is undisputed that Taft and Kohnen continued to represent Calabrese after April 12, 2013. Under the termination test, the statute of limitations begins to run "when the attorney-client relationship for * * * [a] particular transaction or *undertaking* terminates." (Emphasis added.) *Zimmie* at 58. The parties' engagement letter stated that Taft and Kohnen

8

agreed to represent Calabrese "in any criminal proceeding" in which Calabrese was a named defendant "brought as a result of or at the conclusion of the aforementioned investigation." The state and federal cases were both criminal proceedings naming Calabrese as a defendant and—according to Calabrese's version of events—were brought at the conclusion of or as the result of the investigation referenced in the engagement letter. Viewing this evidence in a light most favorable to Calabrese, the state and federal cases could be fairly characterized as the same "undertaking." The question then becomes, when did Taft and Kohnen stop representing Calabrese in this undertaking?

### Calabrese's Confusion of Discovery and Termination Tests

{¶20} Calabrese argues that the attorney-client relationship in the federal case did not terminate until he "discovered" that his federal prison account had been debited on September 10, 2013. Calabrese's argument seems to combine the tests set forth in *Conley*, i.e., the termination test and the discovery test. These tests involve two distinct analyses. Even assuming that Calabrese did not "discover" that Taft and Kohnen had stopped representing him in the federal case until his federal prison account had been debited, this "discovery" is irrelevant. The discovery rule tolls the running of the statute of limitations until the time that a client discovers or should have discovered his or her alleged injury. *Conley* at ¶ 4. Here, Calabrese's malpractice claim revolves around Taft's refusal to represent him in the state case. He did not allege in his complaint that Taft or Kohnen committed malpractice in connection with the debiting of his federal prison account. Consequently, his "discovery" of the debiting of his federal prison account has no relevance to his malpractice claim.

{¶21} Turning to the termination test, and upon a review of the record, we hold that there is no genuine issue of fact concerning when Taft's and Kohnen's

representation ended. Kohnen had terminated the attorney-client relationship, if one had ever existed on the state case, on April 12, 2013. And Kohnen's affidavit stated that he provided no further services to Calabrese after July 22, 2013—the day after final judgment was entered in the federal case. Further, the parties' engagement letter stated that Taft and Kohnen would represent Calabrese through "final judgment." Calabrese failed to offer any evidence of the type contemplated by Civ.R. 56(C) and (E) to show that Kohnen had continued to represent him after Calabrese had been sentenced in federal court. Calabrese did submit to the trial court one email from Taft attorney Chad Ziepfel suggesting that Ziepfel may have continued to work on the federal case after sentencing, but this fails to create a genuine issue of fact concerning when Kohnen's attorney-client relationship with Calabrese had ended. Calabrese did not allege that Ziepfel committed acts of malpractice. Kohnen is the only attorney named as a counterclaim defendant and the only attorney alleged to have committed malpractice, and the claim against him is barred by the statute of limitations. In the absence of a claim against Kohnen, Calabrese's malpractice claim against Taft fails as a matter of law. *See Natl. Union Fire Ins. Co. of Pittsburgh, P.A. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, paragraphs one and two of the syllabus.

### The Tolling Agreement

{¶22} Finally, Calabrese asserts that, even if he should have filed his lawsuit on or before July 22, 2014, the tolling agreement that he executed with Taft tolled the statute of limitations for his malpractice claim against Taft and Kohnen until August 4, 2014. Taft contends that the tolling agreement applies to claims against Taft, only, and not against Kohnen. Taft is correct.

{¶23} The tolling agreement in this case provided, "This agreement is made and entered into by and between Taft, Stettinius & Hollister, LLP ("the Firm") and

10

Anthony O. Calabrese III ("Claimant")." Kohnen was not named in the agreement and he did not sign the agreement.

{¶24} It is well-settled that common words appearing in a written instrument are to be given their plain meaning. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 245, 374 N.E.2d 146 (1978). Under the plain meaning of these words, the tolling agreement did not toll the statute of limitations against Kohnen.

{¶25} Because the tolling agreement did not apply to Kohnen, and because Kohnen is the only attorney that Calabrese sued for malpractice, Calabrese cannot maintain a malpractice claim solely against Taft—whether it was timely or not. *See Wuerth.* The trial court therefore properly entered summary judgment in favor of Taft and Kohnen on the basis that Calabrese's claims were untimely.

{¶26} Calabrese's first and second assignments of error are overruled.

### Civ.R. 56(F)

{¶27} In Calabrese's third assignment of error, he claims that the trial court abused its discretion when it failed to grant his Civ.R. 56(F) motion.

{¶28} Under Civ.R. 56(F), a party opposing a motion for summary judgment may move for a continuance where that party needs more time to conduct discovery. The motion must be supported by an affidavit establishing the reasons for the requested continuance. Civ.R. 56(F). Calabrese failed to abide by this requirement, and failed to file a separate and identifiable motion. *See* Civ.R. 7(B); Civ.R. 10. Rather, Calabrese merely stated on pages 19 and 20 of his memorandum in opposition to summary judgment that in the event the trial court did not agree that there were issues of fact, then he was entitled to conduct full discovery before the summary judgment motion should be considered. This does not constitute a proper request under Civ.R. 56(F). To the extent that these few lines could be considered a "motion" under Civ.R.

11

56(F), we hold that the trial court did not err in denying it since the motion was not supported by an accompanying affidavit, as required. *See Sipple v. A.G. Edwards & Sons, Inc.*, 1st Dist. Hamilton No. C-010701, 2002-Ohio-4342. Calabrese's third assignment of error is overruled.

### Bias of Trial Court

{¶29} In his fifth and final assignment of error, Calabrese contends that the trial judge was biased, and that he should have recused himself from the case. This court does not have the authority to determine whether a trial judge was biased or prejudiced. *Beer v. Griffith*, 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978). The exclusive means for judicial review of a judge's potential bias or prejudice is to file an affidavit of disqualification with the Ohio Supreme Court pursuant to R.C. 2701.03. *State v. Gandy*, 1st Dist. Hamilton No. C-050804, 2006-Ohio-6282, ¶ 22. Calabrese's fifth assignment of error is overruled.

{¶30} The trial court's judgment is affirmed.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MOCK, J.**, concur.

Please note:

The court has recorded its own entry this date.